Name, Address, Telephone No. & I.D. No.
Michael T. O'Halloran (99085) CLS-B
LAW OFFICE OF MICHAEL T. O'HALLORAN
110 West A Street, Suite 1100
San Diego, CA 92101
Tel: 619.233.1727
MTO@DEBTSD.COM

Counsel for Debtor

**Order Entered on**
March 19, 2018
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

CHIENKUO YUAN,

Debtor.

NO.   17-01563-LA7

Date of Hearing: March 8, 2018
Time of Hearing: 2:00 p.m.
Name of Judge:   Hon. L. Adler

## ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through 60  with exhibits, if any, for a total of 60  pages, is granted.  Motion/Application Docket Entry No.   71

//

//

//

//

//

//

DATED:    March 19, 2018

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

LAW OFFICE OF MICHAEL T. O'HALLORAN
(Firm name)

By:/s/ Michael T. O'Halloran
Attorney for [X] Movant [ ] Respondent

CSD 1001A

CSD 1001A [11/15/04] (Page 2)
ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT
DEBTOR: IN RE CHIENKUO YUAN                                    CASE NO: 17-01563-LA7

On March 8, 2018, a hearing was held on the Motion For Approval of Settlement with CP Kelco, Inc.,

Abandonment of Assets, Approval of Administrative Fees of $10,000 For Trustee, Dismissal of Case and Adversary

Proceeding and Other Relief ("the Motion") filed by Chienkuo Yuan. The Honorable Louise D. Adler, United States

Bankruptcy Judge, presided. Michael T. O'Halloran appeared for Chienkuo Yuan. Douglas Flahaut appeared for CP

Kelco U.S., Inc. Richard Kipperman, the Chapter 7 trustee, appeared. No other appearances were made.

Based on good cause appearing in the arguments of counsel and the trustee and the Motion and its supporting

declaration and in light of the lack of opposition to the Motion and based on the stipulation of trustee Richard Kipperman to

obtain a position statement from the Office of the United States Trustee regarding the proposed payment to him,

IT IS ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that the Settlement Agreement attached hereto as Exhibit A is approved except for

Paragraph 13 concerning the proposed payment to trustee Richard Kipperman. The parties shall obtain a written

statement of position of the Office of the United States Trustee regarding this proposed payment. The hearing on that

portion of the Settlement Agreement is continued to March 22, 2018 at 2:00 p.m.

IT IS FURTHER ORDERED for the purpose of precision that:

a.      The condominium located at 12918 Caminito Beso, San Diego, CA 92130 is hereby abandoned from this

bankruptcy estate and can be sold by Chienkuo Yuan with the proceeds remaining after payment of costs

of sale and the note secured by the first deed of trust to be paid to CP Kelco U.S., Inc. from escrow;

b.      The funds previously held in Chienkuo Yuan's Union Bank Account No. 7341061432 and currently held in

Union Bank's General Ledger are abandoned from this bankruptcy estate and shall be paid to CP Kelco

U.S., Inc. as provided in the Settlement Agreement;

c.      The E*TRADE Accounts of Chienkuo Yuan, which are Account Number. 60752620 and 2006935718 are

hereby abandoned from the bankruptcy estate and shall be liquidated and the proceeds paid to CP Kelco

U.S., Inc. as provided in the Settlement Agreement.

d.      The E*TRADE Accounts which are retirement accounts of Ms. Fangling Yuan and Dr. Yuan, namely Ms.

Yuan's IRA Rollover retirement account number 67691585 and Chienkuo Yuan's IRA rollover retirement

account number 66497985 are abandoned from this bankruptcy estate and shall be disposed by the

parties pursuant to the Settlement Agreement Terms.

CSD 1001A

CSD 1001A [11/15/04] (Page 3)
ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT
DEBTOR: IN RE CHIENKUO YUAN                                        CASE NO: 17-01563-LA7

APPROVED AS TO FORM:

ARENT FOX LLP

By: /s/ M. Douglas Flahaut
Counsel for CP Kelco U. S., Inc.

/s/ Richard M. Kipperman
Richard M. Kipperman, trustee

Signed by Judge Louise DeCarl Adler March 19, 2018

CSD 1001A [11/15/04] (Page 4)
ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT
DEBTOR: IN RE CHIENKUO YUAN                                    CASE NO: 17-01563-LA7

# EXHIBIT A

CSD 1001A

Signed by Judge Louise DeCarl Adler March 19, 2018

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by and among CP Kelco U.S., Inc. ("CP Kelco"), Chienkuo "Ronnie" Yuan ("Dr. Yuan"), and Richard Kipperman ("Chapter 7 Trustee") (collectively, "the Parties") with reference to the following facts:

## RECITALS OF CONSIDERATION

**WHEREAS,** on July 7, 2015, CP Kelco filed a civil lawsuit in San Diego Superior Court entitled *CP Kelco U.S., Inc. v. Chienkuo Yuan a/k/a "Ronnie" Yuan* Case No. 37-2015-00022453-CU-BT-CTL ("the Action") against Dr. Yuan;

**WHEREAS,** CP Kelco obtained pre-judgment liens on Dr. Yuan's condominium, E*TRADE accounts, and Union Bank accounts in the Action;

**WHEREAS,** on March 22, 2017 Dr. Yuan filed for Chapter 7 bankruptcy in the United States Bankruptcy Court ("Bankruptcy Court") for the Southern District of California, Case No. 17-01563-LA7 ("Bankruptcy Action"), which is currently pending;

**WHEREAS,** among the debts listed on Dr. Yuan's bankruptcy schedule was CP Kelco's pre-trial claim of $4,600,000.00;

**WHEREAS,** the only creditor of the bankruptcy estate is CP Kelco and CP Kelco was the only claimed filed against the bankruptcy estate;

**WHEREAS,** on April 20, 2017, CP Kelco filed an adversary complaint for denial of discharge in the United States Bankruptcy Court for the Southern District of California, Case No. 17-90103-LA ("Non-Dischargeability Action"), which is currently pending;

**WHEREAS,** the Bankruptcy Court appointed Richard Kipperman as the Chapter 7 Trustee in the Bankruptcy Action;

**WHEREAS,** CP Kelco's claims in the Action were tried to a jury in San Diego Superior Court from August 8, 2017 to August 24, 2017.  On August 24, 2017, the jury rendered a special verdict in CP Kelco's favor, awarded $878,504.00 in compensatory damages, and found that punitive damages were appropriate;

**WHEREAS,** the Court awarded CP Kelco $145,000 in punitive damages for a total sum of $1,023,504.00 in the Action;

**WHEREAS,** the Court entered an Amended Judgment and Stipulation on October 4, 2017, in the Action, attached hereto as **Exhibit A** to this Agreement;

**WHEREAS,** CP Kelco is entitled to an award of attorneys' fees and costs that the Parties acknowledge will result in a judgment likely in excess of $1,800,000;

**WHEREAS,** the Parties, in order to avoid further expenditure of time and expense of litigation, desire to settle and terminate fully and finally any and all differences and disputes between CP Kelco and

1

Dr. Yuan related to Dr. Yuan's employment with CP Kelco, including but not limited to, any and all claims that were raised or could have been raised by CP Kelco, and fully and finally resolve the Chapter 7 Trustee's work in the Bankruptcy Action;

**NOW, THEREFORE,** in consideration of the covenants and agreements set forth herein, and for good and valuable consideration, the receipt and legal adequacy of which is hereby acknowledged, the Parties agree as follows:

<u>AGREEMENT</u>

1.     <u>**Incorporation and Acknowledgment of Recitals**</u>.  The Recitals and identification of the Parties to this Agreement are incorporated by reference as though fully set forth herein.

2.     <u>**Consent from Bankruptcy Court and Chapter 7 Trustee**</u>.  CP Kelco agrees to reasonably cooperate with Dr. Yuan in his efforts to comply with the terms of this Agreement, including submitting any necessary pleadings, stipulations, motions, proposed orders, declarations, and/or other supporting papers.

The Parties agree that upon execution of this Agreement, they will work together expeditiously and in good faith to seek the Bankruptcy Court's consent for Dr. Yuan to pay CP Kelco the Full Settlement Amount or Discounted Settlement Amount pursuant to the terms of this Agreement.

The Chapter 7 Trustee has agreed to cooperate and support CP Kelco's and Dr. Yuan's joint request for relief identified in Section 3 below.  In exchange for the Chapter 7 Trustee's cooperation, Dr. Yuan will pay the Chapter 7 Trustee $10,000 for his work conducted in Dr. Yuan's Bankruptcy Action. This fee will be the total, final, and only amount that the Chapter 7 Trustee is entitled to under the Bankruptcy and Non-Dischargeability Actions.  Dr. Yuan will be solely responsible for any payments that may be required for the services of the Chapter 7 Bankruptcy Trustee.

In addition, the Parties agree that after the Bankruptcy Court has ordered the relief requested under Section 3, the Chapter 7 Trustee will have no other liability or obligations in the Bankruptcy or Non-Dischargeability Actions.  Dr. Yuan will pay the Chapter 7 Trustee the $10,000 fee within 10 business days of the Bankruptcy Court granting the relief requested under Section 3.

The Chapter 7 Bankruptcy Trustee's fees shall not affect Dr. Yuan's obligations to pay the Full Settlement Amount or Disputed Settlement Amount described herein.

3.     <u>**Bankruptcy Action Relief**</u>.  The Parties hereby stipulate to the following relief and, to the extent necessary, agree to work together expeditiously and in good faith to present the additional necessary motions, stipulations, proposed orders, and/or other supporting papers in the Bankruptcy Action seeking the following relief:

      a.     Relief from the automatic stay that is currently in place due to the Bankruptcy Action to take any and all actions to implement the Agreement as to funds previously held in Dr. Yuan's Union Bank Account No.              and currently held in Union Bank's General Ledger, over which CP Kelco obtained a pre-judgment writ of attachment ("Union Bank Funds");

OHSUSA 767708582

Signed by Judge Louise DeCarl Adler March 19, 2018

b.  Abandonment of the bankruptcy estate's interest in the Union Bank Funds back to Dr. Yuan, such that the Chapter 7 Trustee of the Bankruptcy Action is no longer involved in the administration or oversight of the Union Bank Funds.  The Parties agree that CP Kelco's lien remains in place over all funds (including newly deposited funds) in the Union Bank Account and that Dr. Yuan will not be able to access any funds in the Union Bank Account except to pay the Union Bank Account funds to CP Kelco pursuant to paragraph 7 below;

c.  An order or joint request (as appropriate) directing Union Bank to transfer the Union Bank Funds to CP Kelco;

d.  Relief from the automatic stay that is currently in place due to the Bankruptcy Action to take any and all actions to implement the Agreement as to Mrs. Yuan's E*TRADE Accounts, which are Account Nos.                    and                 ("E*TRADE Accounts");

e.  Abandonment of the bankruptcy estate's interest in Dr. Yuan's and Mrs. Yuan's E*TRADE Accounts such that the Chapter 7 Trustee of the Bankruptcy Action is no longer involved in the administration or oversight of the E*TRADE Accounts;

f.  An order or joint request (as appropriate) directing E*TRADE to liquidate the funds in the E*TRADE Accounts and transfer those funds directly to CP Kelco except as to certain retirement accounts of Mrs. Fangling Yuan and Dr. Yuan.  These retirement accounts may also have been frozen by E*TRADE.  For Mrs. Yuan, her IRA Rollover retirement account number is                and for Dr. Yuan, his IRA rollover retirement account is                   .  For avoidance of doubt, to the extent any retirement accounts owned by Mrs. Yuan or Dr. Yuan have been frozen and/or otherwise subject to CP Kelco's lien, those accounts are to be released by E*TRADE so that Mrs. Yuan and Dr. Yuan may have access to them and such accounts will not be liquidated in favor of CP Kelco.  Upon liquidation of Dr. Yuan's E*TRADE Accounts and satisfaction of his obligations under this Agreement, any liens on or to such accounts will be forever released so that Dr. Yuan may thereafter use those accounts;

g.  Relief from the automatic stay that is currently in place due to the Bankruptcy Action to take any and all actions to implement the Agreement as to Dr. Yuan's condominium, located at 12918 Caminito Besto San Diego, California 92130 ("Condo");

h.  Abandonment of the bankruptcy estate's interest in the Condo such that the Chapter 7 Trustee of the Bankruptcy Action is no longer involved in the administration or oversight of the Condo so that Dr. Yuan may sell the Condo himself; and

i.  An order or joint request (as appropriate) permitting the Parties to establish an escrow account through which Dr. Yuan may deliver payments to CP Kelco as described in this Agreement ("Escrow Account").  The Parties agree that the account owned by Dr. Yuan's wife, Fangling Yuan, E*TRADE Checking account              , will be designated as the Escrow Account.  In addition, Dr. Yuan may also deliver payments to CP Kelco by having funds transferred from his family members or third parties, including his daughter Amanda Yuan's account, to CP Kelco's account directly or have third parties pay CP

3

Kelco directly.  As described in Section 12 below, Dr. Yuan will inform CP Kelco through his counsel how payments will be delivered to CP Kelco and from which accounts.

4.      **Failure to Obtain Bankruptcy Action Relief**.  If, despite the good faith and best efforts of the Parties, and not due to the fault of any party, the Bankruptcy Court does not permit the relief sought in Sections 2 or 3 of this Agreement, Dr. Yuan will agree to pay CP Kelco the Full Settlement Amount pursuant to Section 6 of this Agreement or the Discounted Settlement Amount pursuant to Section 7.  If Dr. Yuan pays either amount pursuant to the terms herein, within 5 business days, CP Kelco will dismiss the Non-Dischargeability Action with prejudice, waive all further amounts owed, and support Dr. Yuan's dismissal of his bankruptcy petition as necessary, pursuant to Section 10 and 11.  If Dr. Yuan does not pay CP Kelco the Full Settlement Amount or Discounted Settlement Amount pursuant to the terms herein, CP Kelco will be entitled to file the Stipulated Non-Dischargeable Judgment pursuant to Section 11 of this Agreement.

5.      **Cooperation Regarding Sale of Condo**.  Provided that the Parties receive the relief described in Section 3(g) and (h) of this Agreement, Dr. Yuan agrees to expeditiously place the Condo on the market for sale and to market the house for sale in good faith.  CP Kelco further agrees to reasonably cooperate and provide the necessary documentation to effectuate the sale of the Condo and to allow the disbursement of funds from escrow of the sale of the Condo as contemplated herein.  In addition, if a prospective or actual buyer of the Condo requires any information regarding CP Kelco's willingness to release the lien upon sale and payment as contemplated herein, CP Kelco will provide such assurances. Until the Condo is sold, CP Kelco's lien will remain in place.

Provided that the Parties receive the relief described in Section 3(g) and (h) of this Agreement, the Parties will also agree to work together expeditiously and in good faith to present the necessary order or joint request (as appropriate) directing the escrow company used in connection with the sale of the Condo to first pay the first deed of trust and any costs associated with the sale of the Condo, and then pay all remaining proceeds from the sale of the Condo to CP Kelco.

6.      **Full Settlement Amount**.  Dr. Yuan agrees to pay CP Kelco a total of one million eight hundred thousand dollars ($1,800,000.00) ("Full Settlement Amount") by January 1, 2019.  The Parties agree that payment of the Full Settlement Amount will completely satisfy the judgment in the Action including all post-judgment interest and therefore interest on the Full Settlement Amount will not accrue. If Dr. Yuan pays the Full Settlement Amount, CP Kelco will either destroy or return to Dr. Yuan's counsel the executed Stipulated Final Nondischargeable Judgment and Order described in Section 11.

7.      **Discounted Settlement Amount**.  If Dr. Yuan pays CP Kelco one million, two hundred thousand dollars ($1,200,000) pursuant to the terms and deadlines described in this Section 7 herein ("Discounted Settlement Amount"), then CP Kelco will forgive the balance of the Full Settlement Amount and Dr. Yuan will owe no further sums to CP Kelco.  In addition, CP Kelco will either destroy or return to Dr. Yuan's counsel the executed Stipulated Final Nondischargeable Judgment and Order described in Section 11.

To qualify for the Discounted Settlement Amount, Dr. Yuan will pay the Discounted Settlement Amount pursuant to the following schedule:

        a.    Dr. Yuan will pay CP Kelco a total of $1,200,000 by May 31, 2018.  Dr. Yuan may obtain the funds comprising the $1,200,000 from any source, including the proceeds from the

4

sale of the Condo, liquidation and transfer of the E*TRADE Accounts and Union Bank Funds, or such additional cash as necessary.

b.   Within 10 business days of obtaining consent from the Bankruptcy Court permitting Dr. Yuan to pay CP Kelco pursuant to the terms of this Agreement, Dr. Yuan will pay CP Kelco $200,000, either directly, by depositing the funds into the Escrow Account, or through a family member or third party transferring the funds directly to CP Kelco on Dr. Yuan's behalf;

c.   If the orders from the Bankruptcy Court as described in Section 2 are obtained by February 15, 2018, Dr. Yuan will make a payment of $50,000 either directly to CP Kelco or to CP Kelco through the Escrow Account, or have a family member or third party pay CP Kelco directly on Dr. Yuan's behalf by February 28, 2018;

d.   If the Condo has not been sold by May 31, 2018, then on or before May 31, 2018, Dr. Yuan will pay CP Kelco the balance of the $1,200,000 Discounted Settlement Amount based on the assumption that the net proceeds from the sale of the Condo will be $500,000.  In other words, the balance of the Discounted Settlement Amount that Dr. Yuan will pay by May 31, 2018 will be calculated by subtracting from $1,200,000 the following: (i) the $200,000 initial payment as described in Section 7(b); (ii) the $50,000 payment as described in Section 7(c); (iii) the $500,000 from the forthcoming sale of the Condo; and (iv) the liquidation and transfer of the E*TRADE Accounts and Union Bank Funds.  The Parties agree to settle any shortfall or excess amount resulting from this assumption with appropriate adjustments made through the escrow of the Condo when the sale of the Condo is ultimately effectuated.

e.   If the Condo has not been sold by December 31, 2018, Dr. Yuan will pay the balance of the $1,200,000 Discounted Settlement Amount from any other source of funds, on or before December 31, 2018.  If Dr. Yuan pays this balance and otherwise complies with the payment terms for the Discounted Settlement Amount, CP Kelco agrees to release its lien on the Condo.

8.      **Escrow Account Cooperation**.  If there are any difficulties with the Escrow Account accepting a wire transfer, or if E*TRADE rejects a wire transfer into the Escrow Account, the Parties agree that Dr. Yuan will not be in breach of this Agreement provided that he can show that he attempted to wire the funds in a timely manner and that the actions by E*TRADE were not due to any failure by Dr. Yuan to provide required documentation or take other necessary acts.  If Dr. Yuan can show his timely attempt to wire the funds to the Escrow Account, the Parties agree to cooperate in good faith to communicate with E*TRADE that the funds should be accepted into the Escrow Account and thereupon immediately disbursed to CP Kelco.

9.      **Notification of Entry of Judgment and Settlement**.  The Parties agree that within 5 business days of the execution of this Agreement, CP Kelco will file a Notice of Entry of Judgment in San Diego Superior Court, confirming the entry of the judgment in **Exhibit A**.  Also within 5 business days of the execution of this Agreement, the Parties will jointly submit a notice of settlement in the Action to inform San Diego Superior Court that there will be no further proceedings in the Action such as any post-

5

trial motions or appeals.  CP Kelco and Dr. Yuan waive all rights to appeal and to pursue any post-trial motions in the Action, including motions for recovery of attorneys' fees and costs.

Upon Dr. Yuan's satisfaction of his obligations under this Agreement, within 5 business days, CP Kelco will file a Notice of Satisfaction of Judgment in the Action and will either destroy or return to Dr. Yuan's counsel the Stipulated Nondischargeable Judgment.

       10.    **Dismissal of Bankruptcy and Non-Dischargeability Proceedings**.  Dr. Yuan agrees that his Bankruptcy Action and the related Non-Dischargeability Action will remain pending until Dr. Yuan has paid the Settlement Amount in full.  If Dr. Yuan pays the Discounted Settlement Amount under the schedule set forth above, within 5 business days of Dr. Yuan satisfying the schedule of the Discounted Settlement Agreement, CP Kelco agrees to dismiss the Non-Dischargeability Action with prejudice, waive all further amounts owed, and support Dr. Yuan's dismissal of his bankruptcy petition as necessary.  The Chapter 7 Trustee further agrees to support Dr. Yuan's dismissal of his bankruptcy petition.

       11.    **Stipulated Non-Dischargeable Judgment**.  Dr. Yuan and CP Kelco agree to execute, but not file, a Stipulated Non-Dischargeable Judgment in favor of CP Kelco and against Dr. Yuan in the amount of one million eight hundred thousand dollars ($1,800,000) in the form attached hereto as **Exhibit B** to this Agreement (the "Stipulated Nondischargeable Judgment").  This Stipulated Nondischargeable Judgment will effect entry of a non-dischargeable judgment against Dr. Yuan in the amount one million eight hundred thousand dollars ($1,800,000), less any payments made to Dr. Yuan pursuant to this Agreement prior to the entry of the Stipulated Nondischargeable Judgment.  The Stipulated Nondischargeable Judgement shall be the entire and only recovery that CP Kelco is entitled to should Dr. Yuan fail to perform his obligations under this Agreement in either the Action or the Non-Dischargeability Action.

       If Dr. Yuan does not comply with his obligations under this Agreement by January 1, 2019, or such later date to which the Parties agree in writing, CP Kelco may file the Stipulated Nondischargeable Judgment in the Non-Dischargeability Action.  Should the Stipulated Nondischargeable Judgment be filed, CP Kelco will credit all amounts paid pursuant to this Agreement against the amounts owing under the Stipulated Nondischargeable Judgment.

       12.    **Payment Delivery to CP Kelco**.  Dr. Yuan will make monetary payments pursuant to this Agreement by transferring the funds to the Escrow Account or directly to CP Kelco.  The payments may come from Dr. Yuan, his family members, or other third parties.  Before payments are made, Dr. Yuan's counsel will provide notice to CP Kelco's counsel that a payment is forthcoming, the amount of the payment, and the manner of the payment.  All payments will be in U.S. dollars and made only in the United States.  Dr. Yuan or third parties on his behalf may pay via wire transfer, online payments, or via physical checks.

       Payments made pursuant to this Agreement will be made via wire transfer to the following account for the benefit of CP Kelco unless otherwise agreed in writing with CP Kelco:

       Bank Name: Wells Faro Bank, N.A.
       Account Name: CP Kelco US, Inc.
       Account No.:
       ABA Routing No.: 121000248

SWIFT Code: WFBIUS6S
Contact: Global Headquarters
CP Kelco U.S., Inc.
Toll Free: +1 (800) 535 2687
Telephone: +1 (678) 247 7300
Facsimile: +1 (678) 247 2797
Address: Cumberland Center II
3100 Cumberland Boulevard, Suite 600
Atlanta, GA 30339

All wire or transfer costs, if any, shall be borne exclusively by Dr. Yuan, and shall not be deducted from the payment(s) to CP Kelco.

13. **Payment Delivery to Chapter 7 Trustee**.  For Dr. Yuan's payment to the Chapter 7 Trustee, he has deposited $10,000 into his bankruptcy counsel's (Michael O'Halloran) trust account and will direct Mr. O'Halloran to transfer money from the trust account to the Chapter 7 Trustee within 5 business days of the execution of this Agreement.  The payment may come from Dr. Yuan, his family members, or other third parties.  All payments will be made in U.S. dollars and made only in the United States.  Dr. Yuan or third parties on his behalf may pay via wire transfer, online payments, or via physical checks.

All wire or transfer costs, if any, shall be borne exclusively by Dr. Yuan, and shall not be deducted from the payment to the Chapter 7 Trustee.

14. **Release of Claims**.  Except as provided in this Agreement and claims to enforce this Agreement, and upon satisfaction of the obligations contained herein, each Party fully and finally releases, acquits, and forever discharges the other Parties and their parents, successors, and/or affiliates to the extent any exist, from any and all claims, actual or potential liabilities, causes of action, judgments including the judgment entered into the Action, damages, demands, contracts, or obligations of any kind or nature whatsoever, whether known or unknown, which are based on acts, omissions, or agreements occurring prior to the Effective Date of this Agreement.

15. **California Civil Code § 1542 Waiver**.  The Parties hereby warrant, represent, and agree that they are fully aware of the provisions of California Civil Code section 1542 which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties hereby expressly waive to the fullest extent permissible under the law the foregoing provisions of California Civil Code section 1542, and any similar provisions of law or equity, and any and all rights which it may have to invoke said provisions either now or in the future.

Other than any claims to enforce this Agreement, the Parties represent and warrant they have no other claims or disputes among them.

7

OHSUSA 767708582

16.     **Payment of Attorneys' Fees and Costs**.  The Parties agree to bear their respective attorneys' fees and costs incurred in connection with the actions underlying this Agreement.

17.     **Non-Assignment**.  This Agreement shall be binding upon and inure solely to the benefit of each Party identified herein, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.  The Parties agree they will not assign nor otherwise transfer their rights under this Agreement whether by direct or indirect sale, gift, or other means of transference without written consent by all Parties.

18.     **Advice of Counsel**.  The Parties represent and warrant that they have received independent legal advice from their own attorneys with regard to the advisability of executing this Agreement, and each Party expressly represents and warrants that it has received independent legal advice from its/his own attorneys with regard to the waiver of rights or protection under California Civil Code section 1542 and similar statutes, principles, or rules in other jurisdictions.

19.     **Entire Agreement**.  This Agreement represents the entire understanding among the Parties with respect to the subject matter hereof.  In reaching this Agreement, neither party has relied upon any representation or promise, oral or written, except as set forth herein.  This Agreement has been duly authorized by the Parties, and duly executed by or on behalf of each Party by the duly authorized officers or principals and in the manner required by all laws and regulations applicable to each such entity.  Each party has signed this Agreement of its/his own free will and act, without any legal reservations, duress, coercion or undue influence, and it is each party's intention that it/he be legally bound hereby.

20.     **Governing Law**.  This Agreement shall be governed by and construed in accord with the law of the State of California without regard to choice of law principles.  Any disputes arising under this Agreement shall be filed in the Superior Court of the State of California, in and for the County of San Diego.  This Agreement shall be considered a stipulated settlement for the purposes of Code of Civil Procedure Section 664.6.  The Parties expressly agree, and hereby request, that the San Diego Superior Court maintain personal and subject matter jurisdiction over the Parties and the Action for the purpose of enforcing this Agreement until performance in full of the terms of this Agreement, and for the purposes of seeking enforcement of this Agreement pursuant to Code of Civil Procedure Section 664.6, but only to the extent enforcement is not appropriate in the Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction to enter any order necessary to implement this Agreement.

21.     **Severability**.  In the event any provision of this Agreement shall be held invalid or unenforceable, this Agreement shall be deemed modified, only to the extent necessary to make it lawful.  To effect such modification, the said provision shall be deemed deleted, added to and/or rewritten, whichever shall most fully preserve the intentions of the Parties as originally expressed herein.

22.     **Drafter of Agreement**.  No party to this Agreement shall be considered to be its drafter for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.  No uncertainty or ambiguity shall be interpreted in favor of one party or against another party.

23.     **Amendments or Modifications**.  This Agreement may not be changed orally, but only in writing signed by all Parties.

24.     **Headings**.  The section headings in this Agreement are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

25.     **Effective Date**.  This Agreement shall be effective as of January 24, 2018.

26.     **Notices**.  Unless another person or method is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following persons in writing by overnight delivery or by hand, with a copy by email, addressed as follows:

**For CP Kelco**:
Jerrold Abeles
Diane Roldan
Arent Fox LLP
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213-629-7400
jerry.abeles@arentfox.com
diane.roldan@arentfox.com

**For Dr. Yuan**:
Robert Shwarts
Catherine Lui
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105
415-773-5700
rshwarts@orrick.com
clui@orrick.com

**For Chapter 7 Trustee**:
Richard Kipperman
P.O. Box 3010
La Mesa, CA 91944
619-668-4501
rmk@corpmgt.com

27.     **Confidentiality**.  The Parties may file the Agreement with the Bankruptcy Court but will take care to redact all bank account numbers.

28.     **Counterparts**.  This Agreement may be executed in counterparts or duplicate originals, all of which shall be regarded as one and the same instrument, and which shall be the official and governing version in the interpretation of this Agreement.  This Agreement may be executed by electronic or facsimile signatures and such signatures shall be deemed to bind each Party as if they were original signatures.

*[Signature Page Follows]*

OHSUSA 767708582

Signed by Judge Louise DeCarl Adler March 19, 2018

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed with the intention of being legally bound by it.


Dated: January ____, 2018                                 CP Kelco U.S., Inc.

                                                                          _____
                                                                          By:
                                                                          Position:


Dated: January_____, 2018                               Chienkuo "Ronnie" Yuan

                                                                          _____
                                                                          By: Chienkuo Yuan


Dated: January_____, 2018                               Richard Kipperman,

                                                                          Chapter 7 Trustee

                                                                          _____
                                                                          By: Richard Kipperman


Dated: January ____, 2018                                 Arent Fox LLP, Counsel for CP Kelco U.S., Inc.


                                                                          _____
                                                                          By: Jerrold Abeles, Esq.
                                                                          As to form only


Dated: January _____, 2018                              Orrick, Herrington & Sutcliffe LLP
                                                                          Counsel for Chienkuo "Ronnie" Yuan


                                                                          _____
                                                                          By: Robert Shwarts, Esq.
                                                                          As to form only


10

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed with the intention of being legally bound by it.

Dated: January ____, 2018

CP Kelco U.S., Inc.

_____
By:
Position:

Dated: January_____, 2018

Chienkuo "Ronnie" Yuan

_____
By: Chienkuo Yuan

Dated: January_____, 2018

Richard Kipperman,

Chapter 7 Trustee

_____
By: Richard Kipperman

Dated: January ____, 2018

Arent Fox LLP, Counsel for CP Kelco U.S., Inc.

_____
By: Jerrold Abeles, Esq.
As to form only

Dated: January 24, 2018

Orrick, Herrington & Sutcliffe LLP
Counsel for Chienkuo "Ronnie" Yuan

_____
By: Robert Shwarts, Esq.
As to form only

OHSUSA 767708582

DRAFT
SETTLEMENT PRIVILEGED AND CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed with the intention of being legally bound by it.

Dated: January ___, 2018                     CP Kelco U.S., Inc.

                                             _____
                                             By:
                                             Position:

Dated: January____, 2018                     Chienkuo "Ronnie" Yuan

                                             _____
                                             By: Chienkuo Yuan

Dated: January 23, 2018                       Richard Kipperman,

                                             Chapter 7 Trustee

                                             _____
                                             By: Richard Kipperman

Dated: January ___, 2018                     Arent Fox LLP, Counsel for CP Kelco U.S., Inc.

                                             _____
                                             By: Jerrold Abeles, Esq.
                                             As to form only

Dated: January _____, 2018                    Orrick, Herrington & Sutcliffe LLP
                                             Counsel for Chienkuo "Ronnie" Yuan

                                             _____
                                             By: Robert Shwarts, Esq.
                                             As to form only

10

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed with the intention of being legally bound by it.

Dated: January ___, 2018                    CP Kelco U.S., Inc.

                                            By:  Didier Viala
                                            Position:  President

Dated: January____, 2018                   Chienkuo "Ronnie" Yuan

                                            _____
                                            By: Chienkuo Yuan

Dated: January____, 2018                   Richard Kipperman,

                                            Chapter 7 Trustee

                                            _____
                                            By: Richard Kipperman

Dated: January ___, 2018                   Arent Fox LLP, Counsel for CP Kelco U.S., Inc.

                                            _____
                                            By: Jerrold Abeles, Esq.
                                            As to form only

Dated: January ____, 2018                  Orrick, Herrington & Sutcliffe LLP
                                            Counsel for Chienkuo "Ronnie" Yuan

                                            _____
                                            By: Robert Shwarts, Esq.
                                            As to form only

OHSUSA 767708582

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed with the intention of being legally bound by it.


Dated: January ____, 2018                            CP Kelco U.S., Inc.

                                                _____
                                                By:  Didier Viala
                                                Position:  President


Dated: January____, 2018                            Chienkuo "Ronnie" Yuan

                                                _____
                                                By: Chienkuo Yuan


Dated: January____, 2018                            Richard Kipperman,

                                                Chapter 7 Trustee

                                                _____
                                                By: Richard Kipperman


Dated: January ____, 2018                           Arent Fox LLP, Counsel for CP Kelco U.S., Inc.

                                                *Jerrold Abeles*

                                                _____
                                                By: Jerrold Abeles, Esq.
                                                As to form only


Dated: January _____, 2018                        Orrick, Herrington & Sutcliffe LLP
                                                  Counsel for Chienkuo "Ronnie" Yuan


                                                _____
                                                By: Robert Shwarts, Esq.
                                                As to form only

OHSUSA 767708582

# EXHIBIT A

# TO THE SETTLEMENT AGREEMENT



**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/04/2017** at 02:49:00 PM

Clerk of the Superior Court
By Jenitta Vrissimo,Deputy Clerk

1

2

3

4

5

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF SAN DIEGO, CENTRAL COURTHOUSE

10

11   CP KELCO U.S., INC., a Delaware          CASE NO.  37-2015-00022453-CU-BT-CTL
     Corporation,
12                                            ASSIGNED TO: HON. TIMOTHY B. TAYLOR
                    Plaintiff,                DEPT:   C-72
13
            v.                                [PROPOSED] AMENDMENT TO
14                                            JUDGMENT ON VERDICT
     CHIENKUO YUAN a/k/a "RONNIE"
15   YUAN,                                    COMPLAINT FILED:      JULY 7, 2015
                                              TRIAL DATE:          AUGUST 4, 2017
16                  Defendant.

17

18

19

20

21          The Court having read and reviewed the Stipulation to Amend the Judgment on Verdict

22   and Declaration of Diane Roldán in support thereof, hereby orders that the Judgment on Verdict

23   entered on September 27, 2017, be superseded and replaced with the following:

24

25

26

27

28

                        [PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT

1    This action came on regularly for trial on August 4, 2017, in Department C-72 of the

2    Superior Court, the Honorable Timothy B. Taylor, Judge Presiding; the Plaintiff CP Kelco U.S.,

3    Inc., appearing by attorneys Jerrold Abeles, Ismael Bautista, Jr., and Diane Roldan with the law

4    firm Arent Fox LLP, and the Defendant Chienkuo Yuan A/K/A "Ronnie" Yuan, appearing by

5    attorneys Robert S. Shwarts, Catherine Y. Lui, and Ric Fukushima with the law firm Orrick,

6    Herrington & Sutcliffe, LLP.

7    **THEREUPON,** on August 9, 2017, a jury of twelve (12) persons was regularly

8    impaneled and sworn/acknowledged and agreed to try the cause. Witnesses were sworn and

9    testified. After hearing the evidence and arguments of counsel, the jury was duly instructed by

10    the Court and the cause was submitted to the jury with the directions to return a special verdict.

11    The jury received the case on August 22, 2017, and deliberated until a verdict was reached on

12    August 24, 2017. The jury returned into Court and then rendered a written special verdict, which

13    was accepted by the Court. The jury's signed Special Verdict Form is attached hereto as **Exhibit**

14    **A**.

15    The parties stipulated to have this Court determine the amount of punitive damages. This

16    Court considered the evidence presented at trial, reviewed the briefs, heard detailed arguments on

17    the punitive damages phase on September 6, 2017, and it was submitted for decision. The Court

18    published its tentative decision on September 7, 2017. The Court issued its Statement of

19    Decision, attached hereto as **Exhibit B**, based on the tentative decision on September 25, 2017.

20

21    **IT IS ORDERED AND ADJUDGED** that judgment shall be entered in favor of Plaintiff

22    CP Kelco, Inc. and against Defendant Chienkuo Yuan A/K/A "Ronnie" Yuan as follows:

23    On the first cause of action for misappropriation of trade secrets, judgment is entered

24    against Defendant and on behalf of Plaintiff in the amount of $686,004 in compensatory damages

25    and $145,000 in punitive damages.

26    On the second cause of action for breach of contract, judgment is entered against

27    Defendant and on behalf of Plaintiff in the amount of $686,004 in compensatory damages.

28    On the third cause of action for breach of duty of loyalty, judgment is entered against

- 2 -

Signed by Judge Louise DeCarl Adler March 19, 2018

1   Defendant and on behalf of Plaintiff in the amount of $878,504 in compensatory damages and

2   $145,000 in punitive damages.

3          On the fourth cause of action for violation of Penal Code § 502, judgment is entered

4   against Defendant and on behalf of Plaintiff in the amount of $686,004 in compensatory damages

5   and $145,000 in punitive damages.

6          On the fifth cause of action for violation of Penal Code § 496 - theft, judgment is entered

7   against Defendant and on behalf of Plaintiff in the amount of $686,004 in compensatory damages.

8          Plaintiff shall not be entitled to collect duplicative damages.  Therefore, it is **ORDERED**

9   **AND ADJUDGED** that Plaintiff shall recover from Defendant the sum of $1,023,504.00.

10         **IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff shall be entitled to

11  interest on the judgment amount and costs at the rate of 10% per annum from the date of entry of

12  this Judgment until paid.

13         **IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to Civil Code section

14  3426.4, Penal Code section 496(c), and Code of Civil Procedure section 1032, Plaintiff is entitled

15  to recover its costs from Defendant in the amount of $_____.

16         **IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to Civil Code section

17  3426.4, Penal Code section 496(c), and Penal Code section 502(e)(2), Plaintiff is entitled to

18  recover its attorneys' fees from Defendant in the amount of $_____.

19         **IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to Penal Code section

20  496(c), Plaintiff is entitled to recover three times the amount of actual damages from Defendant

21  in the amount of $_____.

22         **IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to this Court's inherent

23  powers, Civil Code section 3426.2, and Penal Code section 502(e)(1), Plaintiff is entitled to a

24  permanent injunction.  Considering the evidence presented at trial and the full record of this case,

25  the Court orders as follows:

26

27

28

[PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT

Signed by Judge Louise DeCarl Adler March 19, 2018

**DEFINITIONS**

As used herein, the term "CP Kelco Materials" means any and all materials that Defendant obtained during his employment with CP Kelco that is the property of CP Kelco and kept after leaving his employment with CP Kelco, whether or not such materials qualify as trade secrets or proprietary or confidential information, excluding any and all documents that are personal, finance or Human Resources-related such as 401K statements, pay stubs, tax information, and Defendant's employment contract with CP Kelco. The term "CP Kelco Materials" shall include, but is not limited to, all trade secrets identified in CP Kelco's Fourth Amended Identification of Trade Secrets.

The term "Third Parties" shall mean all persons except for (a) Defendant and his counsel and experts and (b) CP Kelco and its employees, counsel, and experts.

**IT IS ORDERED AND ADJUDGED** that:

By October 31, 2017, Defendant must identify and destroy all CP Kelco Materials in his custody, possession, or control, or in the custody, possession, or control of his agents. To identify all CP Kelco Materials, Defendant must review, inter alia, his work and personal email accounts, smart phones, iPad devices, USB devices, and Dropbox accounts. Defendant must also review all other electronic devices, software, or paper files, that he has used to (a) store CP Kelco Materials and retain them after leaving his employment with CP Kelco, or (b) disclose any trade secrets identified in CP Kelco's Fourth Amended Identification of Trade Secrets to Third Parties at any time that are within his possession, custody, or control.

By October 31, 2017, Defendant must provide evidence to CP Kelco and this Court confirming the identification and destruction of the CP Kelco Materials and trade secrets. This evidence shall include: (a) a declaration from Defendant identifying the items located and the manner of their destruction, and (b) a declaration from Defendant's computer forensics expert identifying the files listed in Defendant's Dropbox accounts following the destruction. Copies of CP Kelco Materials essential for Defendant's counsel and litigation experts for use in this civil action, including any appeals, are exempted from the foregoing requirement.

- 4 -

Signed by Judge Louise DeCarl Adler March 19, 2018

1    By October 31, 2017, Defendant must contact in writing all Third Parties with whom he

2    has disclosed or discussed, at any time, the trade secrets identified in CP Kelco's Fourth

3    Amended Identification of Trade Secrets, or the contents of any CP Kelco Materials.  Defendant

4    must identify the trade secrets or CP Kelco Materials disclosed or discussed, and instruct the

5    Third Parties to immediately destroy all CP Kelco trade secrets or CP Kelco Materials in their

6    possession, custody or control, and to refrain from consulting, copying, disclosing, accessing,

7    sharing, or otherwise using CP Kelco trade secrets or CP Kelco Materials in in any way.  A copy

8    of all such correspondence must be provided to counsel for CP Kelco no later than October 31,

9    2017.

10    Until further order from this Court pursuant to Civ. Code section 3426.2(a), Defendant is

11    enjoined from consulting, copying, disclosing, accessing, sharing, or otherwise using CP Kelco's

12    Materials in any way, except as essential for Defendant's continued litigation of this civil action.

13    The foregoing permanent injunction shall become effective upon the posting by CP Kelco

14    of a bond or other security in the amount of $10,000.

15

16    **IT IS SO ORDERED.**

17

18        10/04/2017

19    Dated: _____ 2017

20                                          Hon. Timothy B. Taylor
                                           Judge, Superior Court of California,
21                                          County of San Diego

22

23

24

25

26

27

28

- 5 -

[PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT

# EXHIBIT A

-6-

## · SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
### CENTRAL

### MINUTE ORDER

DATE: 08/24/2017                    TIME: 09:00:00 AM            DEPT:  C-72

JUDICIAL OFFICER PRESIDING: Timothy Taylor
CLERK:  Kelly Breckenridge
REPORTER/ERM: Lynette Marie Nelson CSR# 11585
BAILIFF/COURT ATTENDANT:  O. Godoy

CASE NO: **37-2015-00022453-CU-BT-CTL**  CASE INIT.DATE: 07/07/2015
CASE TITLE: **CP Kelco US Inc vs. Yuan [IMAGED]**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Business Tort

---

**EVENT TYPE:** Civil Jury Trial

---

**APPEARANCES**
Jerrold Abeles, counsel, present for Plaintiff(s).
Catherine Y. Lui, counsel, present for Defendant(s).
Ric Fukushima, counsel, present for Defendant,Plaintiff(s).
Chienkuo Yuan, Defendant is present.
Ismael Bautista, counsel, is present for Plaintiff.
Robert Shwarts, counsel, is present for Defendant.

9:00 am This being the time for further Jury Deliberation, having been continued from 08/23/17, the bailiff assembles all jurors and returns them to the jury room for further deliberation.

10:15 am The jury recesses from deliberations for break and are instructed to return in 15 minutes.

10:30 am The bailiff assembles all jurors and returns them to the jury room for further deliberation.

11:45 am The bailiff notifies the Court that the jury has reached a verdict. The clerk notifies counsel to return to court at 1:30PM for reading of the verdict.

1:25 pm This being the time scheduled for reading of the verdict as attached hereto and incorporated herein by reference in the above entitled cause, all parties and counsel appear as noted above and court is in session.  Upon the Court's inquiry, counsel stipulate to the Court's reading of the verdict. Counsel also stipulate to the simultaneous polling of the jury.

1:27 pm The jury is escorted into the courtroom. Upon the Court's inquiry, the presiding juror states that the jury has reached a verdict. The Court reads the verdict and simultaneously polls the jury.

The clerk records the following results to the question, "Is this your verdict?":

---

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

Question 1A:
Yes 12
No 0

Question 1B:
Yes 12
No 0

Question 1C:
Yes 12
No 0

Question 1D:
Yes 12
No 0

Question 1E:
Yes 12
No 0

Question 1F:
Yes 12
No 0

Question 2A:
Yes 12
No 0

Question 2B:
Yes 12
No 0

Question 2C:
Yes 12
No 0

Question 2D:
Yes 12
No 0

Question 2E:
Yes 12
No 0

Question 2F:
Yes 12
No 0

Question 23:

---

DATE: 08/24/2017          MINUTE ORDER          Page 2
DEPT: C-72                                       Calendar No.
-8-

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

Yes 12
No 0

Question 4A:
Yes 11
No 1

Question 4B:
Yes 11
No 1

Question 4C:
Yes 11
No 1

Question 4D:
Yes 11
No 1

Question 4E:
Yes 10
No 2

Question 4F:
Yes 11
No 1

Question **5**:
Yes 12
No 0

Question 6A:
Yes 12
No 0

Question 6B:
Yes 12
No 0

Question 7:
Yes 12
No 0

Question 8:
Yes 12
No 0

Question 9:
Yes 11

---

Signed by Judge Louise DeCarl Adler March 19, 2018

No 1

Question 10:
Yes 12
No 0

Question 11A:
Yes 12
No 0

Question 11B:
Yes 12
No 0

Question 12:
Yes 12
No 0

Question 13:
Yes 12
No 0

Question 14:
Yes 12
No 0

Question 15:
Yes 12
No 0

Question 16:
Yes 12
No 0

Question 17A:
Yes 12
No 0

Question 17B:
Yes 12
No 0

Question 18:
Yes 12
No 0

Question 19:
Yes 11
No 1

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

Question 20:
Yes 11
No 1

Question 21:
Yes 11
No 1

Question 22:
Yes 12
No 0

Question 23A:
Yes 12
No 0

Question 23B
Yes 9
No 3

Question 23C:
Yes 12
No 0

Question 24:
Yes 10
No 2

Question 25:
Yes 10
No 2

Question 26:
Yes 11
No 1

Question 27:
Yes 11
No 1

The following jurors were present when the verdict was read:

1. Tiffany Flood
2. Ernesto Torres
3. Terra Dawn Brannan
4. Darren Neal
5. Denise Gibbs
6. Mary Griffin

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]        CASE NO: **37-2015-00022453-CU-BT-CTL**

7. Travis Marsh
8. Evelia Felarca
9. Melodi Leih
10. Patricia Buchanan
11. Lori Jamison
12. Adriana Clugston

The following alternate jurors were *not* present when the verdict was read:

1. Clodagh Rafferty
2. Mary Elam
3. Diane Patterson

2:00 pm At the direction of the Court, the clerk records the verdict.

2:01 pm Counsel waive reading of the verdict as recorded.

2:02 pm Upon the Court's instruction, the bailiff escorts the jurors back into the jury room.

2:03 pm Court and counsel discuss the punitive damages phase of trial. Counsel from both sides state they wish to waive jury on the punitive damages phase, and elect instead to have the Court make its decision.

2:13 pm Upon the Court's instruction, the bailiff escorts the jurors back into the courtroom.

2:13 pm The jurors are thanked for their participation, released from the admonishment, and discharged from jury service. All jurors leave the courtroom.

The Court instructs the clerk to notify the alternate jurors.

2:14 pm Court is in recess.

2:32 pm Court reconvenes with plaintiff(s), defendant(s) and counsel present as noted above.

Court and counsel discuss the remaining issues on punitive damages. The Court specially sets further proceedings for argument on punitive damages.

The Civil Court Trial is scheduled for 09/06/2017 at 10:00AM before Judge Timothy Taylor.

The Court does not elicit a waiver of CCP Section 664, and does not order the preparation of a judgment at this time.

2:41 pm Court is in recess until 09/06/17 at 10:00AM.

Signed by Judge Louise DeCarl Adler March 19, 2018

F I L E D
Clerk of the Superior Court

AUG 24 2017

By: K. BRECKENRIDGE

1
2
3
4
5
6
7
8        SUPERIOR COURT OF THE STATE OF CALIFORNIA
9        COUNTY OF SAN DIEGO, CENTRAL COURTHOUSE
10
11  CP KELCO U.S., INC., a Delaware    CASE NO.  37-2015-00022453-CU-BT-CTL
    Corporation,
12                        Assigned to the Hon. Timothy B. Taylor
          Plaintiff,        Dept. 72
13
       v.                **SPECIAL VERDICT FORM**
14
    CHIENKUO YUAN a/k/a "RONNIE"  COMPLAINT FILED:  JULY 7, 2015
15  YUAN,                 TRIAL DATE:    AUGUST 4, 2017
16          Defendant.
17
18
19
20
21
22   We, the jury, find the following special verdict on the questions submitted to us:
23
24
25
26
27
28

-13-

Signed by Judge Louise DeCarl Adler March 19, 2018

## INSTRUCTIONS

Please answer each of the following questions in the order they are presented. In answering the following questions, you must follow the instructions provided by the Court. Nine of you must agree to an answer. However, the same nine jurors do not have to agree to every answer. Once you have completed this form, the presiding juror should sign and date this verdict form and return it to the Court.

## Section A: Claim for Misappropriation of Trade Secrets

**QUESTION NO. 1:** For each item below, has CP Kelco proven by a preponderance of the evidence all of the following: (i) at the time of the alleged misappropriation, the information was secret; (ii) the information had actual or potential independent economic value because it was secret; _and_ (iii) CP Kelco made reasonable efforts to keep the information secret?

*Answer "yes" or "no" for each subpart.*

A.  Methods for modifying genes of native bacteria used to achieve desired outcomes during the fermentation process for the production of gellan gum.

    Yes ✓          No ___

B.  Methods for controlling the fermentation process, and composition of fermentation broth, into which the bacteria culture is placed during the production of gellan gum.

    Yes ✓          No ___

C.  Methods for the post-fermentation treatments of biogums prior to alcohol precipitation.

    Yes ✓          No ___

D.  Methods for testing and predicting the long-term stability of biogums in beverages.

    Yes ✓          No ___

E.  Information regarding the manufacturing methods and customer profile information for the Kelcogel YSS product.

    Yes ✓          No ___

- 2 -

-14-

1    F.    Information regarding the manufacturing methods for developing the AxCel

2          product.

3                                    Yes ✓          No ___

4    *If you answered "Yes" for <u>any of these options</u>, proceed to the next question.*

5    *If you answered "No" for <u>all of these options</u>, please skip the rest of the questions in this*

6    *Section A and proceed to Section B (Breach of Contract).*

7

8    **QUESTION NO. 2:**  Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan

9    improperly used or disclosed the item(s) for which you answered "Yes" in Question No. 1? *You*

10   *should answer this question for <u>ONLY</u> the items where you answered "Yes" above.*

11         *Answer "yes" or "no" for each subpart.*

12   A.    Methods for modifying genes of native bacteria used to achieve desired outcomes

13         during the fermentation process for the production of gellan gum.

14                                   Yes ✓          No ___

15   B.    Methods for controlling the fermentation process, and composition of fermentation

16         broth, into which the bacteria culture is placed during the production of gellan

17         gum.

18                                   Yes ✓          No ___

19   C.    Methods for the post-fermentation treatments of biogums prior to alcohol

20         precipitation.

21                                   Yes ✓          No ___

22   D.    Methods for testing and predicting the long-term stability of biogums in beverages.

23                                   Yes ✓          No ___

24   E.    Information regarding the manufacturing methods and customer profile

25         information for the Kelcogel YSS product.

26                                   Yes ✓          No ___

27

28

- 3 -

Signed by Judge Louise DeCarl Adler March 19, 2018

1    F.    Information regarding the manufacturing methods for developing the AxCel

2          product.

3                                              Yes ✓          No ___

4    *If you answered "Yes" for __any of these options__, then answer the next question.*

5    *If you answered "No" to __all of these options__, please skip the rest of the questions in this*

6    *Section A and proceed to Section B (Breach of Contract).*

7

8    **QUESTION NO. 3:**  Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan's

9    improper use or disclosure was a substantial factor in causing CP Kelco harm or Dr. Yuan to be

10   unjustly enriched?

11              Answer "yes" or "no"          Yes ✓          No ___

12

13        *If you answered "Yes" to this question, proceed to the next question.*

14        *If you answered "No" to this question, please skip the rest of the questions in this Section*

15   *A and proceed to Section B (Breach of Contract – Inventions and Confidentiality Agreement).*

16

17   **QUESTION NO. 4:**  For each item to which you answered "Yes" to Question No. 2, what is the

18   amount that CP Kelco should recover for Dr. Yuan's unjust enrichment and/or CP Kelco's actual

19   loss? *You should answer this question for __ONLY__ the items to which you answered "Yes" in*

20   *Question No. 2.*

21    A.    The methods for modifying genes of native bacteria used to achieve desired

22          outcomes during the fermentation process for the production of gellan gum.

23

24   Amount:                                        $ 130,334

25

26

27

28

                                    - 4 -

B.     The methods for controlling the fermentation process, and composition of fermentation broth, into which the bacteria culture is placed during the production of gellan gum.

Amount:                                                                $ 130,334

C.     The methods for the post-fermentation treatments of biogums prior to alcohol precipitation.

Amount:                                                                $ 130,334

D.     The methods for testing and predicting the long-term stability of biogums in beverages.

Amount:                                                                $ 130,334

E.     The information regarding the manufacturing methods and customer profile information for the Kelcogel YSS product.

Amount:                                                                $ 130,334

F.     The information regarding the manufacturing methods for developing the AxCel product.

Amount:                                                                $ 34,334

TOTAL AMOUNT:                                                  $ 686,004

*Please proceed to the next question.*

**QUESTION NO. 5:** Has CP Kelco proven by clear and convincing evidence that Dr. Yuan acted willfully and maliciously in misappropriating the trade secrets?

Answer "yes" or "no"          Yes ✓          No ___

*Proceed to Section B (Breach of Contract).*

- 5 -

-17-

<u>**Section B: Breach of Contract**</u>

CP Kelco and Dr. Yuan entered into an Inventions and Confidentiality Agreement on October 7, 2004. A copy of the contract was provided to you as Exhibit 3.

**QUESTION NO. 6:** Has CP Kelco proven by a preponderance of the evidence that <u>**either**</u>:

    A.    Dr. Yuan failed to do something that the contract required him to do?

            Answer "yes" or "no"       Yes ✔       No ___

*and/or*

    B.    Dr. Yuan did something that the contract prohibited him from doing?

            Answer "yes" or "no"       Yes ✔       No ___

*If you answered "Yes" to <u>either option</u>, then proceed to the next question.*

*If you answered "No" to <u>both options</u>, please skip the rest of the questions in this Section B and proceed to Section C (Breach of Duty of Undivided Loyalty).*

**QUESTION NO. 7:** Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan's breach of the contract caused CP Kelco harm?

            Answer "yes" or "no"       Yes ✔       No ___

*If you answered "Yes," then proceed to the next question.*

*If you answered "No," please skip the rest of the questions in this Section B and proceed to Section C (Breach of Duty of Undivided Loyalty).*

**QUESTION NO. 8:** Are CP Kelco's damages from this harm the same damages awarded in Question No. 4?

            Answer "yes" or "no"       Yes ✔       No ___

*If you answered "No" to this question, then proceed to the next question.*

*If you answered "Yes" to this question, please skip the rest of the questions in this*

- 6 -

-18-

1 | *Section B and proceed to Section C (Breach of Duty of Loyalty).*

2 |

3 | **QUESTION NO. 9:**  What is the additional amount of damages caused by Dr. Yuan's breach of

4 | the contract?

5 | $ 0

6 |

7 | *Procced to Section C (Breach of Duty of Undivided Loyalty).*

- 7 -

Signed by Judge Louise DeCarl Adler March 19, 2018

1    ## Section C: Breach of Duty of Undivided Loyalty

2    **QUESTION NO. 10:** Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan

3    owed a duty of loyalty to CP Kelco?

4                Answer "yes" or "no"            Yes ✓          No ___

5         *If you answered "Yes" to this question, then proceed to the next question.*

6         *If you answered "No" to this question, please skip the rest of the questions in this*

7    *Section C and proceed to Section D (Unauthorized Access to Computer Data).*

8

9    **QUESTION NO. 11:** Has CP Kelco proven by a preponderance of the evidence that **either**:

10        A.     Dr. Yuan knowingly acted against CP Kelco's interests without CP Kelco's

11              consent?

12              Answer "yes" or "no"         Yes ✓          No ___

13        and/or

14        B.     Dr. Yuan acted on behalf of a party whose interests were adverse to CP Kelco?

15              Answer "yes" or "no"         Yes ✓          No ___

16        *If you answered "Yes" to **either option**, then answer the next question.*

17        *If you answered "No" to **both options**, please skip the rest of the questions in this*

18   *Section C and proceed to Section D (Unauthorized Access to Computer Data).*

19

20   **QUESTION NO. 12:** Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan's

21   conduct in breaching his duty of loyalty was a substantial factor in causing CP Kelco harm?

22               Answer "yes" or "no"         Yes ✓        No ___

23        *If you answered "Yes" to this question, then proceed to the next question.*

24        *If you answered "No" to this question, please skip the rest of the questions in this Section*

25   *C and proceed to Section D (Unauthorized Access to Computer Data).*

26

27

28

Signed by Judge Louise DeCarl Adler March 19, 2018

1  **QUESTION NO. 13:** Are CP Kelco's damages from this harm the same damages awarded in

2  Question No. 4?

3          Answer "yes" or "no"        Yes _____       No ✓

4      *If you answered "No" to this question, then proceed to the next question.*

5      *If you answered "Yes" to this question, please answer Question No. 15.*

6

7  **QUESTION NO. 14:** What is the additional amount of damages caused by Dr. Yuan's breach of

8  his duty of loyalty?

9          —              $ 192,500

10      *Please answer Question No. 15.*

11

12  **QUESTION NO. 15:** Has CP Kelco proven by clear and convincing evidence that Dr. Yuan

13  engaged in the conduct with malice, oppression, or fraud?

14          Answer "yes" or "no"        Yes ✓       No _____

15

16      *Proceed to Section D (Unauthorized Access to Computer Data).*

17

18

19

20

21

22

23

24

25

26

27

28

## Section D:  Unauthorized Access to Computer Data

**QUESTION NO. 16:** Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan knowingly accessed CP Kelco's computers, computer systems, computer networks, computer programs or data?

        Answer "yes" or "no"        Yes ✔        No ___

*If you answered "Yes" to this question, then proceed to the next question.*

*If you answered "No" to this question, please skip the rest of the questions in this Section D and proceed to Section E (Receiving Stolen Property).*

**QUESTION NO. 17:** Has CP Kelco proven by a preponderance of the evidence that <u>either</u>:

    A.    Dr. Yuan knowingly used CP Kelco's data, computers, computer systems, or computer networks in order to devise or execute any scheme to defraud or deceive or wrongfully control or obtain money, property, or data?

        Answer "yes" or "no"        Yes ✔        No ___

*and/or*

    B.    Dr. Yuan took, copied, or made use of any data from CP Kelco's computers, computer systems, or computer networks?

        Answer "yes" or "no"        Yes ✔        No ___

*If you answered "Yes" to <u>either option</u>, then proceed to the next question.*

*If you answered "No" to <u>both options</u>, please skip the rest of the questions in this Section D and proceed to Section E (Receiving Stolen Property).*

**QUESTION NO. 18:** Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan acted without CP Kelco's permission in conducting the activities described above?

        Answer "yes" or "no"        Yes ✔        No ___

*If you answered "Yes" to this question, then answer the next question.*

*If you answered "No" to this question, please skip the rest of the questions in this Section D and proceed to Section E (Receiving Stolen Property).*

1    **QUESTION NO. 19:** Has CP Kelco proven by a preponderance of the evidence that CP Kelco

2    has been harmed by Dr. Yuan conducting the activities described above?

3            Answer "yes" or "no"                    Yes ✓        No ___

4

5        *If you answered "Yes" to this question, then proceed to the next question.*

6        *If you answered "No" to this question, please skip the rest of the questions in this*

7    *Section D and proceed to Section E (Receiving Stolen Property).*

8

9    **QUESTION NO. 20:** Are CP Kelco's damages from this harm the same damages awarded in

10   Question No. 4?

11           Answer "yes" or "no"                    Yes ✓        No ___

12       *If you answered "No" to this question, then proceed to the next question.*

13       *If you answered "Yes" to this question, please answer Question No. 22.*

14

15   **QUESTION NO. 21:** What is the additional amount of damages caused by Dr. Yuan's

16   unauthorized access to computers, computer systems, and computer data?

17                                   $ 0

18       *Proceed to the next question.*

19

20   **QUESTION NO. 22:** Has CP Kelco proven by clear and convincing evidence that Dr. Yuan

21   engaged in the conduct with malice, oppression, or fraud?

22           Answer "yes" or "no"                    Yes ✓        No ___

23

24       *Proceed to Section E (Receiving Stolen Property).*

25

26

27

28

- 11 -

-23-

Signed by Judge Louise DeCarl Adler March 19, 2018

1

2    **Section E:  Receiving Stolen Property**

2    QUESTION NO. 23: Has CP Kelco proven by a preponderance of the evidence <u>any of the</u>

3    <u>following</u>:

4         A.    Dr. Yuan received property that had been stolen from CP Kelco?

5               Answer "yes" or "no"            Yes ✔            No ___

6         *and/or*

7         B.    Dr. Yuan sold or aided in selling property that had been stolen from CP Kelco?

8               Answer "yes" or "no"            Yes ✔            No ___

9         *and/or*

10        C.    Dr. Yuan concealed or withheld from CP Kelco property that had been stolen?

11              Answer "yes" or "no"            Yes ✔            No ___

12        *If you answered "Yes" to <u>any of the options</u>, then proceed to the next question.*

13        *If you answered "No" to <u>all three options</u>, please skip the rest of the questions in this*

14   *Section E, and sign and date the Verdict Form.*

15

16   QUESTION NO. 24: Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan

17   actually knew at the time he received, withheld, sold, or concealed the property in question that it

18   had been stolen?

19              Answer "yes" or "no"            Yes ✔            No ___

20        *If you answered "Yes" to this question, then answer the next question.*

21        *If you answered "No," please skip the rest of the questions in this Section E, and sign and*

22   *date the Verdict Form.*

23

24   QUESTION NO. 25: Has CP Kelco proven by a preponderance of the evidence that Dr. Yuan's

25   conduct harmed CP Kelco?

26              Answer "yes" or "no"            Yes ✔            No ___

27        *If you answered "Yes" to this question, then answer the next question.*

28        *If you answered "No," please skip the rest of the questions in this Section E, and sign and*

- 12 -

-24-

1   *date the Verdict Form.*

2

3   **QUESTION NO. 26:** Are CP Kelco's damages from this harm the same damages awarded in

4   Question No. 4?

5          Answer "yes" or "no"                    Yes ✓          No ___

6          *If you answered "No" to this question, then proceed to the next question.*

7          *If you answered "Yes" to this question, please skip the rest of the questions in this*

8   *Section E, and sign and date this Verdict Form.*

9

10   **QUESTION NO. 27:** What is the additional amount of damages caused by Dr. Yuan's receipt,

11   concealment, or withholding of stolen property?

12                                              $ 0 _____

13

14

15   *Please sign and date this Verdict Form.*

16

17   Dated: August 24, 2017          _Lori Jameson_

18                                              Presiding Juror

19

20          After this Verdict Form has been signed, notify the Deputy that you are ready to present

21   your verdict in the courtroom.

22

23

24

25

26

27

28

                                    - 13 -

# EXHIBIT B

-26-

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO**

**MINUTE ORDER**

DATE: 09/25/2017                 TIME: 08:31:00 AM          DEPT:

JUDICIAL OFFICER PRESIDING: Timothy Taylor
CLERK:  Kelly Breckenridge
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2015-00022453-CU-BT-CTL**  CASE INIT.DATE: 07/07/2015
CASE TITLE: **CP Kelco US Inc vs. Yuan [IMAGED]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Business Tort

---

**APPEARANCES**

---

**Statement of Decision on Punitive Damages Issues**

*CP Kelco v. Yuan*, Case No. 2015-22453

Trial: August 8-Sept. 6, 2017, Dept. 72

1. <u>Overview and Procedural Posture</u>.

This is an action for misappropriation of trade secrets by a manufacturer of kelp and other aquatic plant products against a former senior employee, who abruptly left the company in March of 2014 and moved to China.  Plaintiff alleges he did so after stealing formulas and other trade secrets, and immediately went to work with a Chinese company in direct competition with plaintiff in several of its "hydrocolloids" product lines.  Defendant contends he innocently forgot about proprietary materials he had downloaded to his "DropBox" account; he denies sharing these materials with his new employer, DSM.

The complaint was filed more than two years ago, on July 7, 2015.  About a month later, plaintiff appeared *ex parte*, seeking a right to attach order and a writ of attachment, as well as early, focused discovery.  ROA 10.  The court granted the early discovery request [ROA 12], but denied the attachment order without prejudice in a detailed order.  ROA 11.

Nine days later, plaintiff renewed the attachment request with an enhanced showing.  ROA 14-16.  The court granted the attachment request and imposed a bond.  ROA 18-21, 26.

On October 30, 2015, defendant filed a motion to set aside the attachment order.  ROA 32.  It was set for hearing in January, 2016, but for reasons unknown to the court, continued by defendant to the March 25, 2016 calendar.  ROA 38, 40.  Defendant thereafter answered the complaint.  ROA 49.

At the due-course CMC, the court set the case for trial in November of 2016.  ROA 44-48.  Plaintiff filed extensive opposition to the set-aside motion.  ROA 53-60.  Following the March 25 hearing, the court

---

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

denied the motion. ROA 69-71.

Plaintiff appeared *ex parte* on May 3, 2016 seeking additional writs of attachment on a bank account and a brokerage account. ROA 75-78. Defendant, through recently appointed counsel, opposed the request. ROA 84. After hearing argument, the court granted the request, but set a further hearing regarding confirmation of that order based on a few uncertainties discussed at the *ex parte* hearing. ROA 82, 83. After additional briefing, this hearing went forward on May 27, 2016, following which the court confirmed the additional writs. ROA 101.

The parties appeared on the *ex parte* calendar just a few days later. Defendant wanted a trial continuance; plaintiff opposed the request. Both sides filed extensive briefing. ROA 106, 108-110. On the day of the *ex parte* hearing (June 1, 2016), the court was in trial on a medical malpractice matter with a jury waiting, and thus unable to spend the time with the parties to fully understand their positions. Accordingly, the court set the motion to continue the trial for July 22, 2016 on regular notice, and deemed the *ex parte* papers the moving and opposition papers. ROA 116.

In addition, the parties were unable for several months to successfully negotiate a stipulated protective order facilitating discovery of the trade secret information. This delayed all but the most benign discovery. Thus, the court ordered each side to submit a proposed protective order, and stated that the court would rule on July 22, 2016 and adopt the one that it determined best fit the needs of the case. ROA 116.

To their credit, following the June 1, 2016 hearing, the parties continued their discussions regarding the form of protective order, leading first to partial resolution (ROA 118) and later to complete agreement. ROA 120. Hence, the motion for protective order went off calendar. On July 22, 2016, the court granted the trial continuance request, and set the case for trial in April of 2017. ROA 131-135. (As will be seen, even this revised plan for the resolution of this case did not proceed smoothly.)

Discovery then finally commenced in earnest. In early 2017, the court obtained the assistance of Judge Ken Medel in a discovery referee role. ROA 221. He ended up being very active in resolving discovery disputes in the case, and also tried without success to settle the case. ROA 247-249, 260, 262, 269-271.

When the case was called for the TRC, the parties advised the court that the defendant had filed for bankruptcy protection (SD Cal. Case No. 17-01563-LA7). ROA 279, 282. This caused the court to vacate the April, 2017 trial. ROA 281. At a subsequent status conference, the parties advised the court that relief from stay had been obtained (ROA 283), and the court re-set the TRC and the trial. ROA 294-296. The parties answered ready for a 10-day jury trial at the rescheduled TRC. ROA 299-301. The Joint Trial Readiness Report was unusually thorough and complete, for which the court was grateful.

Defendant filed 8 motions *in limine* as well as yet another sealing motion. ROA 303-319, 376-377. Plaintiff also filed 8 motions *in limine*. ROA 323-342. Oppositions were also filed. ROA 351-374. The court reviewed the papers, which fill two huge binders, as well as the very helpful trial briefs filed by both sides. ROA 347, 349. The court handed out detailed tentative rulings at the outset of the August 8 hearing, and heard detailed argument (which was interrupted when the court took a verdict in another case). The court's rulings are set forth in ROA 395.

On August 9, a jury was selected. Following preliminary instructions, plaintiff presented its opening

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

statement on August 10. Defendant made a motion for a non-suit after plaintiff's opening statement as to counts 3, 4 and 5 of the complaint (breach of loyalty, PC §496, PC §502), solely on "preemption" grounds. The court heard brief argument, and denied the motion without prejudice citing *Angelica Textiles v. Park*, 220 Cal. App. 4th 495 (2013)(4th DCA, Div. 1, Benke, J.).

Defendant thereafter gave his opening statement, and evidence began. Defendant narrowly avoided a mistrial when he made the deliberate decision to volunteer testimony about the prejudgment attachment in violation of CCP § 484.100. Plaintiff rested on August 17 at 10:50 a.m. At that point, the jury had heard from 7 witnesses, and had been exposed to dozens of exhibits. Defendant renewed and expanded the nonsuit motion. ROA 425. [The court deferred argument on the motion so it could review both sides' briefing and to maximize the efficient use of juror time. Defendant put on a 776 witness (Ho), and defendant himself was recalled, in the defense case in chief.] The court heard argument, and thereafter denied the nonsuit motion. The court did not consider the defense case in chief in denying the nonsuit motion. A lengthy jury instruction conference thereafter took place.

The defense case in chief continued on Monday, August 21, 2017. The defense rested that afternoon, and there was a brief rebuttal case. The jury was thereafter instructed, and heard well-prepared argument the following morning. Both sides used PowerPoint presentations incorporating key evidence, the jury instructions, and the special verdict. Altogether, plaintiff asked the jury for damages in excess of $25 million; defendant asked for a defense verdict. Both sides' argument included direct and reference to the importance of credibility determinations, particularly with respect to Dr. Yuan's testimony.

The jury got the case before 2:00 p.m. on August 22, and deliberated the rest of that day and all of the following day. A verdict was reached just before noon on August 24, and the court took the verdict that afternoon. The verdict was in CP Kelco's favor, although in an amount far less than what it asked for: $878,504.00. The jury voted three times on oppression, malice or fraud, and three times found in favor of plaintiff by 12-0 votes. ROA 454. Plainly, the jury did not find Mr. Yuan credible.

The parties stipulated to have the court determine the amount of punitive damages on all counts; in other words, they waived jury with respect to the punitive damages award on the breach of loyalty count. After conferring with counsel, the court specially set the punitive damages phase, and set a briefing schedule. Defendant filed his bankruptcy schedules along with a brief in which he argued the jury had already punished Dr. Yuan. ROA 456-457. Plaintiff also filed a brief. ROA 548-459. The court reviewed the briefs and heard detailed arguments on the punitive damages phase on Sept. 6, 2017, and it was submitted for decision.

The court published its tentative decision in accordance with CCP section 632 and CRC 3.1590 on Sept. 7. It stated it would become the Statement of Decision (SOD) unless the steps required under CRC 3.1590(c) are taken within the timeframe set forth therein. Neither side did so.

CCP section 632 provides:

"In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . ."

"[I]t is settled that the trial court need not, in a statement [of] decision, 'address all the legal and factual issues raised by the parties.' [Citation.] It 'is required only to set out ultimate findings rather than

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]                CASE NO: **37-2015-00022453-CU-BT-CTL**

evidentiary ones.' [Citation.] '"[U]ltimate fact[]'" is a slippery term, but in general it refers to a core fact, such as an element of a claim or defense, without which the claim or defense must fail. [Citation.] It is distinguished conceptually from 'evidentiary facts' and 'conclusions of law.' [Citation.]" (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559.) "The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case." (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118.) A specific finding on a disputed factual issue is not required when that finding may necessarily be implied from a general finding. (*St. Julian v. Financial Indemnity Co.* (1969) 273 Cal.App.2d 185, 194.)

## 2. <u>Applicable Standards</u>.

**A.** Civil Code section 3426.3(c) provides "if willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b)." The jury awarded a total of $686,004.00 on the misappropriation counts. The jury answered Question 5 on the special verdict "yes," by a 12-0 vote, thereby finding clear and convincing evidence that Dr. Yuan engaged in willful and malicious misappropriation.

**B.** In a civil case not arising from the breach of a contractual obligation, the fact-finder may award punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) "Malice" is defined as intentional injury or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (*Id.*, § 3294, subd. (c)(1).) "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id.*, § 3294, subd. (c)(2).) On the breach of loyalty count, the jury awarded $192,500.00, and voted 12-0 that there was clear and convincing evidence that Dr. Yuan had acted "with malice, oppression or fraud."

**C.** In connection with the claim under Penal Code section 502, the jury found 12-0 clear and convincing evidence that Dr. Yuan had "engaged in the conduct with malice, oppression or fraud." Penal Code § 502(e)(4) provides: "In any action brought pursuant to this subdivision for a willful violation of the provisions of subdivision (c), where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice as defined in subdivision (c) of Section 3294 of the Civil Code, the court may additionally award punitive or exemplary damages." The jury did not award any additional damages on this count, beyond those awarded for misappropriation.

**D.** The due process clause of the Fourteenth Amendment to the United States Constitution places constraints on state court awards of punitive damages. (See *State Farm Mut. Auto Ins. Co. v. Campbell* (2003) 538 U.S. 408, 416-418 (*State Farm*); *BMW of North America v. Gore* (1996) 517 U.S. 559, 568 (*BMW*).) In 2005, the California Supreme Court explained the basis of these constraints: "The imposition of 'grossly excessive or arbitrary' awards is constitutionally prohibited, for due process entitles a tortfeasor to ' "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." ' [Citation.]" (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1171 (*Simon*).)

In *State Farm*, the high court articulated "three guideposts" for courts reviewing punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]                    CASE NO: **37-2015-00022453-CU-BT-CTL**

cases." (*State Farm*, *supra*, 538 U.S. at p. 418; see also *BMW*, *supra*, 517 U.S. at p. 575.)

**E.** California "defines malice in law as an "intent to do a wrongful act, established either by proof or presumption of law ... from the intentional doing of the act without justification or excuse or mitigating circumstances." *In re V.V.*, 51 Cal.4th 1020, 1028 (2011) (citing *Davis v. Hearst*, 160 Cal. 143 (1911); Cal. Penal Code §§ 7(4), 450(e); 1 Witkin & Epstein, *Cal. Criminal Law* § 11) (internal quotation marks omitted); *see also Tinker v. Colwell*, 193 U.S. 473, 485–86, 24 S.Ct. 505, 48 L.Ed. 754 (1904) ("Malice, in common acceptation, means ill will against a person, **but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse**" (quoting *Bromage v. Prosser*, 4 Barn. & Cress. 247, 107 Eng. Rep. 1051 (K.B.1825) (internal quotation marks omitted), *superseded by statute*, Pub.L. No. 95–598, 92 Stat. 2549 (1978); *Maynard v. Fireman's Fund Ins. Co.*, 34 Cal. 48, 53 (1867)(same). ...

"In contrast, malice in fact is defined as "a **state of mind** arising from hatred or ill-will, evidencing a willingness to vex, annoy, or **injure another person**." *Davis v. Hearst*, 160 Cal. at 160; *In re V.V.*, 51 Cal.4th at 1028 ("Malice in fact-defined as 'a wish to vex, annoy, or injure' ...-consists of actual ill will or **intent to injure**.")"    *In re Plyam*, 530 B.R. 456, 463–64 (B.A.P. 9th Cir. 2015)(some internal parallel citations omitted).

Under § 523(a)(6) of the Bankruptcy Code, "the willful injury requirement speaks to the state of mind necessary for nondischargeability. An exacting requirement, it is satisfied when a debtor harbors "either a subjective intent to harm, or a subjective belief that harm is substantially certain." *In re Su*, 290 F.3d at 1144; *see also In re Jercich*, 238 F.3d at 1208. The injury must be deliberate or intentional, "not merely a deliberate or intentional **act** that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). *In re Plyam*, *supra*, 530 B.R. at 463.
**F.** Financial condition of the defendant must be shown. *Adams v. Murakami*, 54 Cal. 3d 105 (1991). This is required so that the amount of punitive damages is sufficient to punish and make an example of the defendant, but not so large as to render him destitute. Here, there was evidence at trial of Dr. Yuan's sizable current income in China, as well as evidence from the schedules he filed in his bankruptcy case earlier this year.
**3. Discussion and Ruling.**

The court's credibility determinations are guided by the factors of CACI 107, among others.

CACI 3942 was the Judicial Council's effort to put into plain English the requirements and teachings of *State Farm* and other case law.

Plaintiff requested a punitive damages award of $1.75 million.

Defendant suggested that the court make no punitive damages award.

The court awards total punitive damages of $145,000.00. Although neither side offered a net worth conclusion, this amount is less than 10% of Dr. Yuan's total assets of $2,376,800 as listed in his bankruptcy schedules. It leaves intact his retirement account and his interest in that of his spouse. According to part 17.3 of Form 106A/B of his bankruptcy schedules, Dr. Yuan could pay this amount, feel the sting of having to do so, yet retain other cash and cash equivalent accounts listed in parts 17 and 18 of the schedules. He of course is free to continue his remunerative employment in China. The award also takes into account the unanimity expressed by the jury.

Under *State Farm*, the court must first consider the degree of reprehensibility of the defendant's

Signed by Judge Louise DeCarl Adler March 19, 2018

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

misconduct. The court finds the conduct in this case in the midrange of reprehensibility. On the one hand, there was no physical harm, no threat to safety, no weak or vulnerable plaintiff. On the other hand, there was a pattern of behavior, there was a near total disregard for Kelco's legal rights, and there was deceit. Dr. Yuan acted fraudulently in several respects. He admitted several false statements on Exs. 187, 188, 363 and 554. He admittedly misused CP Kelco letterhead to write a completely phony grad school recommendation letter for the son of a contact in Taiwan, and then tried to sell the jury on the notion that he had given CP Kelco secrets to this young man to have him practice his English by translating them. The jury obviously did not believe this testimony, and neither did the court.

Nor did the jury believe Dr. Yuan's testimony about the timing of his collection of the gellan gum and related trade secrets. The court concludes, as the jury evidently did, that he assembled these internal CP Kelco documents and emailed them to himself (and then to DropBox) not for the purpose of advising on production issues in the waning days of his time in San Diego, but rather so that he would be able to "shorten the runway" once he took up his new employment. He had already been in discussions with DSM, and the inference was strong that he began the trade secret collection effort in preparation for his departure. This was not a mere customer list case, as is often true in litigation of this sort. The jury obviously agreed with plaintiff's characterization of the trade secrets at issue as the "crown jewels."

There was a lamentable breach of trust here. An employee is entitled to leave an employer to go to work for a competitor. He is even entitled to time his departure so as to collect his bonus immediately before leaving. Arguably he is entitled to visit the potential new employer while traveling abroad on the soon-to-be old employer's nickel. He is entitled to take with him his experience and the accumulated knowledge in his brain. What he is not entitled to do is assemble internal documents of the company he intends to depart, remove them from company control, and then try to cover his tracks. What he is not entitled to do is translate and share internal documents of his employer with a potential customer under the guise of helping her son, and then fail to disclose the contact in an annual survey, and then receive remuneration for having done so.

Thus, the court finds a significant degree of reprehensibility in Dr. Yuan's conduct. KP Kelco was a company that had treated him well for 14 years. His direct supervisor had expressed gratitude and appreciation for his work. He was well paid. He had the regard of his colleagues, who trusted him. The trial displayed that this trust was misplaced. Dr. Yuan acted selfishly, and when this self-interest became misappropriation, the jury correctly concluded he was unjustly enriched. Dr. Yuan displayed either a subjective intent to harm CP Kelco, or a subjective belief that harm was substantially certain. Recognizing that the ultimate determination rests with the Bankruptcy Court, the court is of the view that the jury's verdict, and the court's punitive damage award, should be non-dischargeable.

The second *State Farm*/CACI 3942 factor is the relationship between the actual or potential harm suffered by the plaintiff and the punitive damages award. Because of the realities of international business competition, and the fact that China has a legal system and tradition very different from our own, we may never know the true extent to which Dr. Yuan and/or his new employer benefitted from the trade secrets he took. The jury accepted the inference of use, but struggled with the damages sought by plaintiff. The relatively modest punitive damages award takes all of this into account.

The third factor under *State Farm* and CACI 3942 is the relationship between the punitive damages and the civil penalties authorized or imposed in comparable cases, as well as the relationship between the punitive damages and the defendant's overall financial picture. The latter has already been partially addressed by the court. The amount of the award is far less that the doubling contemplated under Civil Code section 3426.3(c). In reaching this award, the court has considered that plaintiff, as prevailing

CASE TITLE: CP Kelco US Inc vs. Yuan [IMAGED]          CASE NO: **37-2015-00022453-CU-BT-CTL**

party, will likely be presenting a substantial memorandum of costs and a substantial motion for attorneys' fees.  This will likely result in a final judgment significantly higher than the amounts awarded by the jury, with a consequent impact on defendant's ability to pay.

Plaintiff raised the prayer for injunctive relief at the phase 2 hearing.  Neither side raised it further pursuant to CRC 3.1590(j) and (k).  The request is therefore denied.

*** 

The clerk is ordered to serve copies of this decision on counsel for both sides via USMail.

Ms. Roldan is ordered forthwith to submit a form of judgment consistent with the foregoing and the jury's verdict.

**IT IS SO ORDERED.**

*Tim B Taylor*
_____

Judge Timothy  Taylor

Signed by Judge Louise DeCarl Adler March 19, 2018

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** CP Kelco US Inc vs. Yuan [IMAGED]

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>**37-2015-00022453-CU-BT-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the attached minute order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 09/25/2017.

Clerk of the Court, by: _K. Breckenridge_ _____ , Deputy

JERROLD ABELES
ARENT FOX LLP
555 WEST FIFTH STREET 48TH FLOOR
LOS ANGELES, CA 90013

ROBERT SHWARTS
ORRICK HERRINGTON & SUTCLIFFE LLP
405 HOWARD ST
SAN FRANCISCO, CA 94105

DIANE ROLDAN
ARENT FOX LLP
555 W 5TH ST 48TH FL
LOS ANGELES, CA 90013

☐ Additional names and address attached.

CLERK'S CERTIFICATE OF SERVICE BY MAIL

Page: 1

**PROOF OF SERVICE**

I am a citizen of the United States and I am over the age of 18 years old. My business address is Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013-1065.  My electronic service address is vivian.labarreda@arentfox.com.  I am employed in the County of Los Angeles, where this service occurs.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

**[PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT**

☒  (BY E-MAIL) On this date, I personally transmitted the foregoing document(s) via electronic mail to the e-mail addresses of the persons on the attached service list.

☐  (BY MAIL)  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business. On this date, I placed the document(s) in envelopes addressed to the person(s) on the attached service list and sealed and placed the envelopes for collection and mailing following ordinary business practices.

☐  (BY PERSONAL SERVICE)  On this date, I delivered by hand envelope(s) containing the document(s) to the persons(s) on the attached service list.

☐  (BY OVERNIGHT DELIVERY)  On this date, I placed the documents in envelope(s) addressed to the person(s) on the attached service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

☒  (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 3, 2017, at Los Angeles, California.

_____
Vivian La Barreda

- 6 -

[PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT

Signed by Judge Louise DeCarl Adler March 19, 2018

1

*CP Kelco, U.S., Inc., v. Chienkuo Yuan a/k/a "Ronnie" Yuan,*
Superior Court of San Diego Case No. 7-2015-00022453-CU-BT-CTL

2

3

### SERVICE LIST

| | |
|---|---|
| Cathy Lui<br>Robert Shwarts<br>Ric Fukushima<br>Melinda Blake<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105-2669 | Attorneys for Defendant Chienkuo Yuan a/k/a/ "Ronnie" Yuan, an individual<br><br>Telephone: 415.773.5571<br>Facsimile: 415.773.5759<br><br>Email Addresses:<br>clui@orrick.com<br>rshwarts@orrick.com<br>rfukushima@orrick.com<br>mblake@orrick.com<br>mrodas@orrick.com<br>mswirky@orrick.com |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] AMENDMENT TO JUDGMENT ON VERDICT

# EXHIBIT B

# TO THE SETTLEMENT AGREEMENT

1    Jerrold Abeles (SBN 138464)
     M. Douglas Flahaut (SBN 245558)
2    ARENT FOX LLP
     555 West Fifth Street, 48th Floor
3    Los Angeles, CA 90013-1065
     Telephone:    213-629-7400
4    Facsimile:    213-629-7401
     Email:       jerry.abeles@arentfox.com
5               douglas.flahaut@arentfox.com

6    Counsel for Plaintiff CP Kelco U.S., Inc.

7    Michael T. O'Halloran CLS-B (SBN 99085)
     LAW OFFICE OF MICHAEL T. O'HALLORAN
8    1010 Second Avenue, Suite 1727
     San Diego, CA 92101
9    Telephone:    619-223-1727
     Email:       mto@debtsd.com
10

11    Counsel for Defendant Chienkuo "Ronnie" Yuan

12              **UNITED STATES BANKRUPTCY COURT**

13              **SOUTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| In re: | Bankruptcy Case No. 17-01563-LA7 |
| **CHIENKUO YUAN,** | Chapter 7 |
|          Debtor. | |
| | Adversary Proceeding 17-90103-LA |
| **CP KELCO U.S., INC.**, a Delaware Corporation | |
|          Plaintiffs, | **STIPULATED FINAL NONDISCHARGEABLE JUDGMENT AND ORDER** |
|          v. | |
| **CHIENKUO YUAN a/k/a "RONNIE YUAN"** | |
|          Defendant. | Judge: Hon. Louise DeCarl Adler |

Plaintiff CP Kelco U.S., Inc. ("CP Kelco") and Defendant Dr. Chienkuo "Ronnie" Yuan ("Dr. Yuan") (collectively, the "Parties") have agreed to the entry of this Stipulated Final Judgment and Order to resolve the above-captioned adversary proceeding (the "Adversary Proceeding") as follows:

**WHEREAS,** on July 7, 2015, CP Kelco sued Dr. Yuan in California Superior Court for the County of San Diego, styled *CP Kelco U.S., Inc. v. Chienkuo Yuan a/k/a "Ronnie" Yuan*, Case No. 37-2015-00022453-CU-BT-CTL (the "California Action");

**WHEREAS,** in the California Action, CP Kelco stated claims against Dr. Yuan for (1) misappropriation of trade secrets; (2) breach of contract; (3) breach of the duty of loyalty; (4) violation of Penal Code § 502; and (5) violation of Penal Code § 496;

**WHEREAS,** on March 22, 2017 Dr. Yuan filed for Chapter 7 bankruptcy in this Court, Case No. 17-01563-LA7 (the "Bankruptcy Action"), which is currently pending;

**WHEREAS,** CP Kelco initiated the above-captioned Adversary Proceeding in this Court on April 20, 2017 by filing a complaint against Dr. Yuan (the "Complaint").  CP Kelco stated claims for a non-dischargeable debt pursuant to 11 U.S.C. § 523 (a)(2)(A) under a theory of fraud, 11 U.S.C. § 523(a)(4) under a theory of breach of the duty of loyalty, embezzlement, and larceny, and finally under 11 U.S.C. § 523(a)(6) under a theory of willful and malicious injury;

**WHEREAS,** on August 24, 2017, the jury in the California Action rendered a special verdict awarding CP Kelco a total of $878,504.00 in compensatory damages and finding punitive damages were appropriate;

**WHEREAS,** on September 25, 2017, the court in the California Action awarded CP Kelco $145,000 in punitive damages;

**WHEREAS,** the court in the California Action entered an Amended Judgment and Stipulation on October 4, 2017;

**WHEREAS,** CP Kelco is entitled to an additional award on the judgment in the California Action of its attorneys' fees and costs in an amount that the Parties acknowledge and agree will increase the total judgment to likely more than $1,800,000;

OHSUSA:767712954.2

1         **WHEREAS,** the Parties, in order to avoid further expenditure of time and expense of

2 litigation, desired to settle and terminate fully and finally any and all differences and disputes

3 between them related to Dr. Yuan's employment with CP Kelco, including but not limited to any

4 and all claims that were raised or could have been raised by CP Kelco;

5         **WHEREAS,** on January 24, 2018, the Parties entered into a Settlement Agreement and

6 Release that permits this stipulation to be filed in the event of a default by Dr. Yuan;

7         **WHEREAS,** the Court has been advised that Dr. Yuan has defaulted on his obligations

8 under the Settlement Agreement, having paid CP Kelco $_____ [amount to be

9 filled in by counsel for CP Kelco upon default] rather than the amount agreed to under the

10 Settlement Agreement;

11         **NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** that a

12 nondischargeable judgment shall be entered in favor of CP Kelco and against Dr. Yuan in the

13 Adversary Proceeding in the amount of $_____, consisting of $1,800,000

14 less $_____ already paid by Dr. Yuan.

15

16 Dated: _____      **ARENT FOX LLP**

17

18                            _____

19                            JERROLD ABELES
                           M. DOUGLAS FLAHAUT

20                            Attorneys for Plaintiff
                           CP KELCO U.S., INC.

21

22                            **LAW OFFICE OF MICHAEL T. O'HALLORAN**

23 Dated: _____

24

25                            _____
                           MICHAEL T. O'HALLORAN

26                            Attorney for Defendant
                           CHIENKUO "RONNIE" YUAN

27

28

OHSUSA:767712954.2

Signed by Judge Louise DeCarl Adler March 19, 2018

## FINAL JUDGMENT AND ORDER

1

2    Plaintiff CP Kelco U.S., Inc. and Defendant Chienkuo Yuan a/k/a "Ronnie" Yuan have

3    agreed to the entry of this Stipulated Final Judgment and Order to resolve the above-captioned

4    adversary proceeding.  On **January 24, 2018,** the Parties executed a Settlement Agreement and

5    Release pursuant to which Dr. Yuan agreed that the debt of $1,800,000.00 is non-dischargeable

6    and shall likewise be non-dischargeable in the event Defendant defaults on any of his payment

7    obligations under the Settlement Agreement and Release.  Dr. Yuan acknowledges that he is in

8    default on his obligations under the Settlement Agreement and Release.

9    **IT IS THEREFORE ORDERED** that judgment be entered in favor of CP Kelco and

10    against Dr. Yuan in the amount of $_____, all of which is nondischargeable.

11    This amount reflects Dr. Yuan's $1,800,000 obligation to CP Kelco less Dr. Yuan's payments to

12    CP Kelco of $_____ under the Settlement Agreement and Release.

13

14    IT IS SO ORDERED:

15

16    _____

17    JUDGE LOUISE DeCARL ADLER
DATED:  _____

18

19

20

21

22

23

24

25

26

27

28